David Gauntlet for LSI. I'd like to reserve three minutes for rebuttal. Your Honor, I think there's three possible pathways to potential coverage in this case based on the distinct three offenses that we believe are implicated, piracy, unfair competition, and infringement of slogan. The key thing to look at in this case is the fact that this complaint is 12 pages long. If it was a patent suit with only patent allegations, it could statutorily be two. Those extra 10 pages tell you a lot about Mark's behavior that was objectionable to Phillips and explains why there's a lot more going on than a simple recitation of the statutory provisions when dealing with patent infringement. Therein lies the opportunity to look at the unfair competition and infringement of slogan offenses. And I think when you do, you'll see that there's a fair argument that they're implicated here. Ginsburg. You know, I keep reading this complaint, since that's obviously the central document we need to start from. They're a complaint in the underlying suit. Yeah. The underlying suit. And I tried to divine these additional claims that you talk about, and I was having trouble when we get to the relief section, where they basically want a declaration of patent infringement, an injunction of the 740 patent, damages under the patent statute. Right. And the problem has probably been exacerbated by the fact that opposing counsel is misstating law. It is not the theory of damages that is of any pertinence in analyzing the duty to defense, because facts not labels are determinative. But this isn't a question of damages. This is what the judgment is for. So in other words, that's different. I mean, now you're splitting hairs because if you just ask for damages, that's fine. Yes. Because that could include not only patent infringement but unfair competition and piracy, but where does the piracy claim come out of the complaint? Well, piracy is actually one that flows in the center of the patent suit. If all that was sued for is just patent and that alone, piracy would be implicated because piracy by dictionary definitions encompasses patent infringement. In other words, the term in the policy is broad enough to encompass patent. As Judge Krowski saw in Mez, a 1999 decision by the Court of Appeal where he said that, hey, two courts in California have found that piracy may encompass patent infringement. The Supreme Court of Nebraska in Land and Sky in 1995 said yes, and that includes the Intex case where the Court assumed that patent could mean piracy. So that ---- If you take that and then follow it along, is there anything ñ where is it in the record with respect to the coverage territory issue that you might define that anything was being alleged beyond the United States? It's the website, Your Honor, and the content of the website. And the fact is the website is an electronic billboard which is accessible instantaneously to these electronic designers who are the market for this product in places outside the U.S. within the coverage territory such as the U.K. And indeed, the content of the website was drafted in the U.K., mentions offices in the U.K., and references local distribution centers in the U.K. Okay. So your ñ just to understand your claim, then, any time a website is mentioned in factual allegations per force the insurance company should divine just by virtue of how the Supreme Court has described the web, you know, without frontiers, without borders, cyberspace is not a place and all that, they should divine then that it would cover both domestic and international by reference to a website. I mean, I'm just trying to understand how it would be written. Well, in that, Exhibit E was also attached to the complaint, and Exhibit E with specificity gave the content of the website, which content included all these specific distribution outlets within the U.K. But the actual allegation of the Phillips complaint of infringement is that the infringement is occurring in the United States. Well, all it says is that there is a patent in the United States, which is being infringed. Well, that's included in paragraph 25, saying that there's an infringement by making, using, selling, and or offering for sale within the United States and or importing into the United States products that incorporate the methods claimed in the patent, et cetera. So it's more than just saying there's a U.S. patent. It says the infringement is occurring in the United States. And then in 26, it goes on to reference as a variable. It says, for example, it gives an example of the infringement in the United States. The plain reading of it is that. Well, what possible reading of it is that? Another possible reading is that they meant to look beyond the United States as well, because as they concede at page 33 of their opposing brief, this policy could cover a U.S. lawsuit. So let's go beyond patent for a moment, and let's look at unfair competition, and let's look at infringement of slogan, and let's look at pension trust, which is a case where Judge Alsop was reversed when the same counsel represented him. And the Court noted therein at page 951, remote facts buried within causes of action are sufficient to invoke the defense duty. Thus, where allegations supported antitrust allegations, they could prompt a duty to defend an antitrust lawsuit, even though the only coverage was for piracy. And that's what that case said. So it's all about the facts. We're going to get all of that out of the word obtained from? I mean, just because it's a website, is that what you're asking us to do? The only relevance to the website here is, one, it's an advertising medium, which is widespread. And that's how I read 26. Here's an example, and we happen to get it off their website. And second, however, that exhibit E as attached and incorporated in the complaint references our solicitation activity in places outside the U.S. Philips is a Dutch company. We have facilities where we manufacture products in Japan. This product is worldwide disseminated to electronics designers. But because of the fact that Philips brought the claim for patent infringement, that by definition is limited to the United States, correct? The suit was in the U.S., but just as other courts have found recently, the NTP case, conduct outside the U.S. can create liability in the U.S. The Federal Circuit's recent decision in NTP, which is the subject of my 28-J letter, found that the BlackBerry could have a relay in Canada, yet that that system, like the system here, could create liability in the U.S. Anywhere else in the complaint besides these two paragraphs that I would look to give evidence of your theory? The international aspect? Just Exhibit E and the additional documentation which was provided to the carrier of website information beyond Exhibit E that is in the record as attachment to the letters that we sent to the carrier. So just from looking at the complaint then, at least as I saw Exhibit E, it was showing examples of what the architecture was and the use of it. And the fact that it was I2C compatible, which is very important, because that's the issue. But then the insurance company is supposed to look at Exhibit E and see that it references England? The insurance company was informed in long letters by us, while the case was not resolved, the significance of that website, the significance of the other website information in possibly triggering that kind of liability. We also cited to them the HPB Signet case, which involved slightly distinct language in an international policy where the bad act there was placing in inkjet cartridges instructions, which were in various languages, which tell you not to refill the inkjet cartridges. The court, Judge Williams and then Judge Ware in two separate opinions, found that that advertising conduct occurred both contemporaneously in the U.S. and in the coverage territory of that international policy, which, like ours, was outside the U.S. So you can have contemporaneous bad acts where you have a vehicle that's advertising. All of this makes sense to me, because that's the real world of how these things work. I'm just having trouble fitting it in the context of this complaint and this information, because What's different from inkjet cartridge inserts and a website that is available electronically to an electronic designer? What's distinct about that? The only difference is HP is dealing with a consumer. We're dealing with a more sophisticated purchaser who's going to use this to make set-top boxes so he can drive various sorts of consumer electronics products. Did the attachments by counsel to those letters include any discovery, anything, basically, that Phillips had adduced during the course of the litigation that would cause an objective observer to conclude that the allegations were now for conduct occurring outside the United States? Well, there was the deposition or, rather, the discovery request asking for advertising materials, and it didn't specify that they were limited to any particular territory. And then in the recitals of the settlement agreement, which are referenced in Mr. Hughes' declaration, which, though the court granted evidentiary objections to it, we appealed specifically the evidentiary objections. And we now argue that he certainly was competent to talk about a settlement agreement he drafted. And in it, it's first, both parties agree that what was going on here were there were inchoate claims for unfair competition. Let me try to rephrase my question. Okay. I'm trying to determine whether there's an analytical distinction between good lawyers sitting down trying to come up with the best arguments that they can as to why the insurer should cover this claim and evidence from the actual conduct of the litigation by the plaintiff that would give some evidence that that's they're right, that that's where this case is heading. Well, it only has to be a potentiality, and that means that they have to show that there's no potentiality, that it couldn't involve international. The website gives you the inquiry that it's a possibility. The content does as well. And the settlement agreement recitals, which both parties drafted, clarify that that's a possibility as well. But from your standpoint, I would want that settlement agreement drafted as broadly as possible to cover every conceivable claim, whether made or not in this litigation. And the question I'm wrestling with is what is it that the plaintiff in the underlying litigation did or said that should have put the insurer on notice that that's what we were dealing with in this litigation, as opposed to good lawyers sitting around thinking up hypothetical ways that the insurance policy might be invoked to cover? Well, the question was never asked of Phillips. Are you seeking recovery for conduct outside the United States? Well, there's a good reason they weren't asked, because the complaint said they're seeking recovery for things happening in the United States. Right. For example, an example. I guess I have difficulty getting past. Well, you're stuck in the patent infringement demand, though. It's as if this case, in your eyes, can only be a patent infringement case when there are fact allegations that permit it to be an unfair competition case. No, I think I understand. It's not in the claim for relief, although that articulates what seems to permeate the allegation. Well, that's how the cause of action is. So the causes of action, if you go back and then you look at the facts. Let's take it a different way. Let's get off the coverage territory and say, okay, that's right. Can these letters be a slogan? I have a question in my mind about that. And I'm interested, you know, they're not words, of course, can be slogans, and there can be things that are slogans that are abbreviations. But these are basically the acronym for a product name. And I'm interested in what's your best case that these would be treated as slogans. Well, the best case is a case applying California law from the southern district of New York called QVM. And what was going on there is somebody was stretching limousines out of Ford Navigators, and they clarified that that's where they were doing by putting the letters QVM, which people in the industry who stretch limousines knew meant quality vehicle modification, which is what Ford allowed you to put on a stretch Navigator when it was okay. We, that is, Ultra Coach, allegedly did that, got sued, and they were found to have used that moniker as a slogan by a court, and the court applied California as well as New York law, finding the result same under both. There's also the phrase wearable light for a flashlight warrant found to be a slogan, a case called Santa's Best where the phrase new technology was found to be a slogan. It depends on the audience. And if you're an electronic designer, I2C compatible is very meaningful because it allows you to know that this particular product can be plugged into a system that you've already got in place. And that's what, if you look at the complaint carefully in light of who was the audience for that product, that's what Phillips was upset about because it believed that its informal standard was an issue. Is your slogan I2C compatible or is it just I2C? I2C. Okay. So it's not like Intel Inside, which is a slogan, I think. But so it's only, in analyzing it, we only look at the letters. Well, there also is a moniker with just a little box that is an insignia for and a symbol of that. But it's like Intel Inside. That's a perfect analogy, Your Honor, because to people in the industry, that told them that this was a compatible product which would allow them to safely design with all the other heightened features when they did the set-top boxes they were trying to create. Counsel, you have exceeded your time by quite a bit, but we'll restore some of that for rebuttal since we used quite a bit of it ourselves. You may begin whenever you're ready. Good morning, Your Honors. May it please the Court. My name is Limor Lahavi, and along with my partner, Paul Breslin, we represent the insurance company of the State of Pennsylvania, which is also referred to as ICSOP by that acronym. I'll start with some incontrovertible facts. It is a fact that in October 2001, Phillips sued LSI in the Federal District for the infringement of United States Patent No. 4689-740, not for anything arising out of advertising on a website or anywhere else, not for unfair competition, not for infringement of slogan, or anything else that could be covered under ICSOP's foreign advertising injury policy. Phillips' complaint was for patent infringement, and contrary to what counsel said, that was not just a label. That was the sole raison d'etre for that complaint. It was the sole basis for relief. It was the sole basis for damages. It was the sole basis for jurisdiction for being in the Federal District. It was the sole right that Phillips' complaint, complaint LSI infringed upon, and the only charge made. And the Phillips complaint is in the record at ER 30. Did LSI tender a claim to my client asking for a defense of that lawsuit? No. Why not? Because LSI knew that the complaint for patent infringement was not covered and could not be covered under ICSOP's foreign liability policy. Fast forward nearly two years. We're now in August 2003, and now LSI and Phillips settle the patent infringement lawsuit. LSI for the first time then contacted my client. That first letter my client received from LSI about the Phillips lawsuit is in the record at pages 1089 through 1091. Reviewing the letter, it is clear that LSI asked ICSOP to settle a case that was already settled. LSI would not provide ICSOP with any specifics about the settlement asserting confidentiality, and the settlement is not in the record in this case. The evidentiary objections to the declaration of counsel about what the settlement said were sustained, and the opening brief by appellant does not cite any reason why that evidentiary ruling should be overturned. It is obvious that the Phillips patent infringement lawsuit did not contain any language that could create coverage under ICSOP's foreign liability policy. What LSI tried to do by bringing ICSOP into the case after it had settled was to incorporate buzzwords from the policy language into their final settlement agreement, such as And now the policy. The insuring clause of ICSOP's foreign advertising injury coverage has three pertinent requirements on all LSI has the pertinent proof here because they are in the insuring agreement, and they fail on all three. The first requirement is the territory requirement. The second requirement is the specified offense requirement. And the third is that there be a causal connection between injury and advertising. The California Supreme Court held in the Waller case that it is the insured's burden to bring its claim within the basic scope of coverage. Waller also held that a court may not speculate, may not indulge in a forced construction of the policy's insuring clause to bring a claim within coverage. And LSI fails to meet the burden on all three requirements, whether we're applying the narrower standard of actual coverage, which applies to the duty to indemnify, or whether we're applying the broader standard of potential for coverage, which applies to the duty to defend. The first requirement, the coverage territory, which in ICSOP's foreign policy, not surprisingly, excludes the United States, was interpreted by Industrial Indemnity v. Apple. That's a California appellate case, and it's binding here. That case interpreted the exact same language, and it held that in order to satisfy the coverage requirement, the insured has to prove that both the conduct causing the injury and the injury itself occurred outside of the coverage territory. In this case, simply because it's patent infringement, that's inherently impossible. The linchpin of LSI's case rests on the incorrect premise that even though patent infringement is jurisdictionally only actionable when it occurs in the United States, somehow that requirement is waived to get coverage under this foreign policy simply because an admission of the patent infringement is found on a website, which, of course, by its nature. I didn't actually hear the argument that way, so maybe I misunderstood it. I thought it was – I think that counsel for LSI acknowledges that patent infringement itself would not be covered. But as I heard it, by looking at paragraphs 26 and 27, by referencing a website and by referencing a website that implicates specifically foreign conduct in a country that was not one of the excluded countries, that that put the company, the insurance company, on notice of conduct outside the territory that if it is either a slogan or unfair competition or some other coverable claim would be within the duty to defend. Which leads us to the next two policy requirements. The next one is that there be a nexus between the advertising and the injury. And there's nowhere in the Phillips complaint that Phillips says that that website itself caused Phillips's injury. The injury was caused by the infringement of Phillips's rights in the patent, not by LSI's doing anything with those rights on its website. And the Bank of the West held that there's no potential for coverage if the injury does not have a causal connection with the insurance advertising activities. That's a California Supreme Court case. The reason that was given by the Bank of the West court for that holding is that otherwise any act, any harmful act, by the mere reason that it is advertised would then subject the carrier to cover the claim. And LSI's flawed premise is precisely the absurd result that Bank of the West found necessary to avoid. There's four controlling Ninth Circuit cases, IOLAB, Microtech, Simply Fresh Fruit, and Pacific Group, all cited in our brief, that are directed to this very issue.  The advertising activities must cause the injury, not merely expose it. And I submit to you that that is, to the extent that that website was international and does constitute advertising, that advertising merely exposed LSI's bad acts. They didn't cause the injury to Phillips. The third requirement, the enumerated offense. In order to get piracy, which is one of the things that they're claiming here, the IOLAB case, the Ninth Circuit case, defined piracy and advertising injury policies as misappropriation or plagiarism found in the elements of the advertisement itself, in its text form, logo, or pictures, rather than in the product being advertised. So piracy has to be a pirated ad, an element of the ad itself, rather than the underlying product. As far as infringement of slogan, I agree that I-square-C and S-and-Bus are not slogans. The case that my opponent's ---- Kagan, I didn't say they were or weren't. I was just questioning. He characterized them as slogans. I disagree with that characterization. And the only case that was cited for an acronym of this type being a slogan was the rule 36.3. It's a district case from New York. Well, it wouldn't be our rules that govern whether it's citable here or not. It would be the rules of that district or of the Second Circuit. Our rules do not govern them. So do you know what the Second Circuit or the Southern District rules are about citation of nonpublished opinions? No, I do not, Your Honor. Okay. But that case did hold that QVM is a slogan. But in that case, the person, the company that was using the acronym QVM was sued because they were using it as a slogan. These allegations were specifically in the case. They alleged that they had a right to use that name as a name, and that was the injury that they were complaining of. Here, Phillips did not complain about LSIs using I-square-C and SMBus as a slogan. They complained about their using of their patented technology. And that's the big distinction. That's the kind of distinction that the cases from the circuit analyzing the causal connection between the offense, the harmful conduct, and the injury draw. In order to have a case for an infringement of slogan, the person suing has to say that it owned the slogan, that it owned the name, or that it used it to promote products, or that it had a right to prevent others from using them, or that the marketplace associated those terms with them, or that the use of the term itself infringed on some rights. None of these allegations are found in the Phillips lawsuit against LSI. And I agree, they don't have to say, we are suing you for infringement of slogan. But they do have to say something that would lead a reasonable insurance company to conclude that they're claiming that what was wrong here was the use of that acronym, and they simply did not do that. And if no one has any other questions? I don't believe that we do. Thank you, Ms. Lahavy. And, Mr. Gronkley, we'll give you two minutes for rebuttal, since we used a bit of your time. Thank you very much. QVM was my case, Your Honor, and in the Southern District of New York, we were second circuit rules. It is capable, you can cite Westlaw, Lexis freely. There's a misstatement of what the standard is. It is not advertising to injury. It is advertising to offense. That's what the linkage needs to be. And you can clarify that by looking at Krausky's opinion in J. Lamb at 100 Calab 4th at 1032. Coverage is triggered by the offense, not the injury or damage which a plaintiff suffers. If you look at the Supreme Court's recent decision in Hamid at 31 Calab 4th, 16 at 22, it says the policy only covers offenses committed in the course of advertising by its reference to the Peerless case, which so found. So that's what you have to show, is that advertising creates liability for an offense. So is the infringement of slogan, is the unfair competition causally linked to advertising? Well, if you're on the website, that's advertising. Liability can arise. If you look at paragraph 16. Before you go on, do you have any cases that have addressed this website issue in this context? OKL, which is an Ohio Court of Appeals decision, has found that a website is advertising under any definition that's cited in the materials. And that's pretty straightforward. There are some other cases that are cited in the materials as well. In fact, on infringement of slogan and unfair competition, I urge you to look at our reply brief. Every point she raised is countered therein. And moreover, in terms of ownership, Phillips, as to ITC, had a trademark in that. They owned it. What they were upset about, if you look at paragraph 16. Did they trademark a slogan? No. And they could have limited it to a trademark slogan, but they didn't. But a slogan is often implicated where a trademark right is asserted. In other words, they thought it important enough to trademark it. They had value in it. They said in paragraph 16 that LSI's advertising of the S-200 product exploited its market standard. In other words, they knew who the violators were out there. Because if you weren't a licensee under their patent, and you advertised I2C compatible, this informal industry standard, you were invading their marketplace, which is beyond patent claims and goes to unfair competition. Because if their patent expired tomorrow, they could still claim rights in the marketplace to keep people from claiming I2C compatibility, because that was only available to people who were licensees, who had built up a reputation around the use of that particular mark. Thank you, counsel. The case just argued is submitted, and we will stand adjourned for the morning. I want to thank all counsel this morning for very helpful presentations. Thank you all.
judges: Graber, McKewon, Tallman